625 A.2d 663

**Lynn OKKERSE, an Incompetent by Douglas J. OKKERSE, her guardian, Appellant,**

**v.**

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1992.

Filed May 4, 1993.

David R. Black, Media, for appellant.

David M. McCormick, Philadelphia, for appellee.

Before McEWEN, BECK and HESTER, JJ.

HESTER, Judge.

Douglas Okkerse, in his capacity as guardian of his wife, Lynn Okkerse, appeals from the April 27, 1992 order dismissing several counts of his multi-count complaint. The issues presented in this appeal relate to the propriety of the trial court's dismissal of the count in the complaint premised upon the application of 42 Pa.C.S. § 8371, which provides for the imposition of interest, attorney's fees, and punitive damages when an insurer, in bad faith, denies a claim. We conclude that because the insurer's alleged bad faith conduct occurred after the effective date of section 8371, that section can be applied in this proceeding even though the insurance contract was issued prior to the date. We also rule that the section 8371 claim should not have been dismissed due to its potential conflict with the attorney's fees and interest recoverable under sections 1009.106(a)(2) and 1009.107(3) of the former Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.-101–1009.701 (repealed effective October 1, 1984) ("No–Fault Act"). We reverse.

Appellant instituted this declaratory judgment action on August 13, 1990, against Prudential Property and Casualty Insurance Company seeking a determination that he is entitled to a continuation of first party benefits on behalf of his

incompetent wife under an insurance policy governed by the provisions of the No-fault Act. The complaint indicates the following. On June 3, 1983, Mrs. Okkerse sustained severe and disabling injuries in an automobile accident. At the time, she was insured under a policy issued in accordance with the provisions of the No-fault Act. As a result of the accident, appellant never will be able to care for herself again.

Since June 3, 1983, Mrs. Okkerse has been receiving various medical and vocational rehabilitation services, which were paid by appellee until June 26, 1991, when it informed appellant that it would no longer pay for certain services, including certain physical, speech, equestrian, and occupational therapies. Appellant provided appellee with various opinions of medical providers that the described therapies continue to improve Mrs. Okkerse's cognitive, social, and vocational functioning, her physical capabilities, her psychological well-being, and her quality of life. Appellee nonetheless stopped paying for those services. Appellant alleged that the denial of coverage was in bad faith.

Appellee filed preliminary objections to five counts of the seven-count complaint. The trial court sustained those objections, and this appeal followed.[1] On appeal, appellant's argument relates only to the propriety of the court's decision to strike count four, which was premised upon the application of 42 Pa.C.S. § 8371. Accordingly, we consider only the propriety of the court's decision striking count four. 42 Pa.C.S. § 8371 provides:

1. Since the order dismissed separate and distinct counts of a multi-count complaint, we consider it a final, appealable order under the doctrine discussed in *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983). In *Gatten v. Merzi,* 397 Pa.Super. 148, 579 A.2d 974 (1990), we held that when one count of a multi-count complaint is dismissed and that count sets forth a right to relief premised upon statutory law, the order is appealable. *See also Jenkins v. Hospital of Medical College,* 401 Pa.Super. 604, 585 A.2d 1091 (1991) (en banc). The present appeal involves the propriety of dismissal of a count premised upon application of a statutory provision. The appeal therefore is properly before us under the reasoning of *Gatten v. Merzi.*

**Actions on insurance policies**

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

 First, we examine whether the trial court correctly concluded that section 8371 could apply only to insurance policies issued after the effective date of section 8371. Statutes which affect substantive rights are not applied retroactively. The statute will be considered retroactive in its application only when it relates back to give a previous transaction a legal effect different from that which it had under the law in effect when the transaction occurred. *McMahon v. McMahon,* 417 Pa.Super. 592, 612 A.2d 1360 (1992). Further, a statute may be applied in a proceeding if it does not impair a contract, disturb a vested right, or vary existing obligations contrary to their situation when entered. *Smith v. Fenner,* 399 Pa. 633, 161 A.2d 150 (1960).

 In *Lynn v. Prudential Property and Casualty Insurance Co.,* 422 Pa.Super. 479, 619 A.2d 779 (1993), we held that a provision which does not impair an insurer's obligations under a policy of insurance but merely imposes new procedures for the enforcement of those rights could be applied to insurance contracts entered prior to the effective date of the statute.

Herein, appellee's obligations under the policy issued prior to the effective date of section 8371 have not been changed. Section 8371 also does not affect either the terms of the insurance contract or the vested rights thereunder. It merely prohibits an insurer from engaging in a bad faith refusal to pay benefits due under the policy.[2] An insurer did not have a

2. We observe that in the present case, there is no question that all the alleged bad faith conduct of the insurer occurred after the effective date

right to act in bad faith toward its insured prior to the statute's enactment. Thus, it is clear the statute is not being applied retroactively in this case.

We find support for our conclusion in the well-reasoned opinion of *Coyne v. Allstate Insurance Co.*, 771 F.Supp. 673 (E.D.Pa.1991). At issue in *Coyne* was whether section 8371 could be applied to an action where the insurer's alleged bad faith conduct occurred after the effective date of section 8371, but the policy had been issued prior to that date. The district court observed that the insured's bad faith claim was not premised upon the application of the insurance policy but on "the defendant's alleged conduct-all of which occurred after the act's effective date." *Id.* at 675. The Court further noted that the "application of [section 8371] does not alter the insurance policy's substantive requirements, interfere with the insurer's contractual rights, or otherwise impair the parties' obligations." *Id.* The Court stated that while an insurer does have the right to rely upon the provisions of its policy, it "never had the right to act in bad faith toward the insured." *Id.*

The Court therefore concluded that section 8371 was not being applied retroactively to the bad faith conduct occurring after its effective date, regardless of when the policy was issued. *See also Seeger by Seeger v. Allstate Insurance Co.*, 776 F.Supp. 986 (M.D.Pa.1991) (section 8371 claim may be premised upon bad faith actions taken by insurers on or after its effective date even if policy was issued prior to that date because there is no contractual right to act in bad faith); *American Franklin Life Insurance Co. v. Galati*, 776 F.Supp. 1054, 1063 (E.D.Pa.1991) (same).

■ We next examine whether the trial court correctly dismissed the section 8371 claim due to its alleged conflict with No-fault Act provisions relating to payment of interest and attorney's fees. Former section 1009.106(a)(2) of the No-fault

of section 8371. *Compare Liberty Mutual Insurance Co. v. Paper Manufacturing Co.*, 753 F.Supp. 156 (E.D.Pa.1990) (section 8371 cannot be applied to bad faith conduct occurring prior to its effective date since under then existing law, the insured had no action for bad faith denial of insurance benefits).

Act provided that benefits are overdue and bear interest at eighteen percent per annum if not paid within thirty days after the insurer's receipt of reasonable proof of the fact and amount of loss sustained. Section 1009.107 provided in relevant part, "(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended." 40 P.S. § 1009.107(3) (repealed).

Appellee suggests that since the general provisions of section 8371 providing for payment of punitive damages, interest, and attorney's fees conflict with these sections of the No-fault Act, the No-fault Act provisions should prevail, and appellant's claim under section 8371 was dismissed properly. We disagree.

1 Pa.C.S. § 1933 contains the rule of construction to be applied whenever provisions in statutes allegedly conflict:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

We thus begin our analysis with the premise that the specific provisions in the No-fault Act allowing for interest and attorney's fees shall be construed, if possible, so that both those provisions and the more general provision enacted in 42 Pa.C.S. § 8371 may be given effect. Only if the two are in irreconcilable conflict should the sections of the No-fault Act prevail, unless the general provision was enacted later, and it is the legislature's intent that the latter, should prevail.

The two statutes do not conflict. Attorney's fees are assessed under the No-fault Act if there is no foundation for a denial. Similarly, section 8371 provides for an award of

attorney's fees for a bad faith insurance denial. Both statutes provide for the payment of interest on overdue claims—section 8371 requires that the claim be denied in "bad faith" before interest accrues. Section 1009.107(3) requires the absence of reasonable foundation for the denial. The fact that both statutes provide the same remedy for similar actions can hardly be viewed as a conflict. Finally, the imposition of punitive damages in section 8371 does not conflict with any provision of the No-fault Act.

It is clear that at this point, appellee has the potential for recovering the same damages under two different standards. However, it is not clear that he actually will be able to recover under both since the standards under each statute differ. A potential for conflict may occur if appellee is entitled to the same damages under both provisions. However, dismissal was premature.

Once again, we find a federal case, *Seeger by Seeger v. Allstate Insurance Co.,* 776 F.Supp. 986 (M.D.Pa.1991), instructive. There, the district court considered whether section 8371 conflicted with section 1716 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701 *et seq.* Section 1716 is a reenactment of the provisions of the No-fault Act at issue herein. The *Seeger* court saw no conflict between section 1716 and the allowance of punitive damages under section 8371.

It also observed that the two provisions may potentially conflict as to calculation of interest and attorney's fees. The court noted, however, that the insured may not necessarily be entitled to attorney's fees and interest under both provisions since different conduct by the insurer is required under each. The court noted further that although there is a potential conflict between the two, it is not a rationale for dismissing the section 8371 claim in its entirety since the insured may not necessarily be entitled to section 8371 damages.

We concur in this analysis. The allowance of punitive damages does not irreconcilably conflict with the allowance of attorney's fees and interest under the relevant provisions of the No-fault Act. Furthermore, appellee may be determined

to be entitled to interest and attorney's fees under sections 1009.106 and 1009.107 of the No-fault Act since he supplied "reasonable proof" of damages while not being entitled to damages under section 8371 if no bad faith conduct is present. The fact that appellee has the potential for recovering under both sections is not a reason for dismissing the count under section 8371.

■ However, to the extent that both provisions are determined to apply in this action and result in a different calculation of interest and attorney's fees, the two statutes will be in conflict. In that case, however, the provisions of *section 8371* must prevail. Section 8371 was enacted as part of Act 1990–6, P.L. 11 on February 7, 1990. Section 31(c) of Act 1990–6 provides, "All other acts and parts of acts are repealed insofar as they are inconsistent with the act." Under 1 Pa.C.S. § 1933, the provision enacted later prevails if it is the manifest intent of the General Assembly that it should. Section 8371 was enacted later than the No-fault Act and this repealer section indicates that the General Assembly intended it to prevail over any inconsistent statutes.

In accordance with the foregoing, the order is reversed and case remanded. Jurisdiction relinquished.